In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3899

United States of America,

Plaintiff-Appellee,

v.

Carmella Dawson,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 378-01--James F. Holderman, Judge.

Argued April 6, 2001--Decided May 4, 2001


   Before Flaum, Chief Judge, and Posner and
Williams, Circuit Judges.

   Flaum, Chief Judge.  Carmella Dawson
exploited her position as a billing clerk
at a Chicago hospital in order to defraud
the institution of over $175,000. After a
grand jury indicted Dawson on six counts
of mail fraud, she entered into a plea
agreement with the government. Pursuant
to that agreement, Dawson pled guilty to
one count of the indictment and
acknowledged that she owed the hospital
$175,089 in restitution. On October 23,
2000, the district court sentenced Dawson
to 18 months imprisonment, and ordered
her to pay the previously agreed upon
amount in restitution. Dawson now appeals
her sentence, arguing that her
restitution judgment should be vacated,
and the cause remanded, so that the
district court can offset the amount she
owes by any payments that may have been
made by her co-schemers. Furthermore,
Dawson contends that the application of
the Mandatory Victims Restitution Act of
1996 ("MVRA") to her crime violates the
Ex Post Facto Clause of the United States
Constitution. For the reasons stated
herein, we affirm the decision of the
district court.

I.  BACKGROUND

   Carmella Dawson was employed as a

Medical Services Plan Billing Clerk for the Rush Presbyterian St. Luke's Hospital ("Rush Hospital") in Chicago, Illinois. In that capacity, one of Dawson's duties was to prepare the paperwork that triggered the issuance of refund checks to insurance companies that had overpaid the hospital. Recognizing an opportunity for illegal gains, Dawson (along with her then husband, Derrell Adams) recruited individuals to assist in defrauding the hospital. For three years, Dawson prepared and filed the necessary paperwork so that the hospital unwittingly issued refund checks to her selected co-schemers. Once an individual received his or her "refund," Dawson or Adams would accompany that person to cash the check. For assisting in the machination, the individual would receive a portion of the check sum, with the lion's share going to Dawson and Adams. In all, Dawson fraudulently caused Rush Hospital to issue approximately 100 checks, totaling $175,089.

Eleven of Dawson's payees cooperated with the government, detailing how the scheme was perpetrated. As a result of their testimony, Dawson was indicted by a grand jury on six counts of mail fraud in violation of 18 U.S.C. sec. 1341. Rather than proceed to trial, Dawson entered into a plea agreement with the government. Pursuant to that agreement, on May 23, 2000, Dawson pled guilty to Count One of the indictment, and the government dismissed the remaining five counts. As to the amount Dawson was obligated to repay the hospital, the agreement contained a statement that "[r]egarding restitution, the parties acknowledge that the amount of restitution owed to Rush Presbyterian St. Luke's Hospital, Chicago, Illinois . . . [is] $175,089 and that pursuant to Title 18, United States Code, section 3663A the court must order defendant to make restitution in this amount."

In a sentencing memorandum, Dawson acknowledged that she owed Rush Hospital $175,089 in restitution. However, Dawson remarked that "several [of her] co-schemers [had] entered into pre-trial diversion agreements with the government towards resolving their criminal liability." Typically, she noted, those types of agreements require restitution to be made to the victim. Dawson informed

the court that she had received no information as to whether her co-schemers had contributed towards restitution. She requested that if any such payments had been made to Rush Hospital, that the restitution figure of $175,089 be offset to reflect those payments, thereby ensuring that the hospital not receive a "windfall." Neither the probation officer who authored the Presentence Investigation Report nor the government responded to Dawson's contention regarding restitution. On October 23, 2000, the district court sentenced Dawson to 18 months imprisonment, followed by three years of supervised release, and ordered Dawson to pay restitution in the amount of $175,089.

On appeal, Dawson contends that, because of possible restitution payments by her co-schemers, the district court lacked authority to order full restitution sans offset. Additionally, Dawson posits that the MVRA effectuates a criminal penalty, which was applied in her situation in violation of the constitutional prohibition against ex post facto laws.

## II. DISCUSSION

### A. Offsetting Of Restitution

Dawson's first contention on appeal is that the government failed to meet its burden of proving Dawson's liability for $175,089 in restitution. Dawson notes that under 18 U.S.C. sec. 3664(e) "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." In this instance, Dawson points out that several of her co-schemers entered into pretrial diversion agreements with the government in order to resolve their respective criminal liabilities. Dawson posits that wrongdoers do not typically cooperate with the government without entering into some form of agreement regarding restitution, "and it is difficult to imagine that the government would have allowed offenders to escape prosecution through pretrial diversion absent seeking restitution." Thus, she contends that the restitution judgment should be vacated, and the cause remanded with instructions to offset Dawson's restitution obligation by any restitution payments previously

made by co-schemers.

A district court's authority to order restitution is a question of law which is reviewed de novo. United States v. Wells, 177 F.3d 603, 608 (7th Cir. 1999). Any dispute as to the proper amount of restitution is resolved by the district court under the preponderance of evidence standard. See 18 U.S.C. sec. 3664(e). Assuming a district has correctlyconcluded that restitution is authorized, the court's calculation of the amount of restitution is reviewed for clear error. United States v. Newman, 144 F.3d 531, 542 (7th Cir. 1998).

We note at the outset that Dawson does not contend that the district court lacked authority to order restitution in this instance. Furthermore, despite Dawson's statements to the contrary, she is not challenging her liability for $175,089. In her plea agreement, Dawson specifically notes that, under the MVRA, she is responsible for paying Rush Hospital the full amount owed. Rather, Dawson is arguing that her co-schemers surely have made restitution payments, and that therefore her liability must be offset by the amounts paid, in order to prevent Rush Hospital from receiving a "windfall."

We agree with Dawson that Rush Hospital should not receive anything more in restitution than is required to make the hospital whole. See, e.g., 18 U.S.C. sec. 3664(f)(1)(A). Furthermore, we are not unsympathetic to Dawson's assertion that the information on restitution that she requests is solely in the province of the hospital and the government. At oral argument, the government assured this Court that it had not sought nor received restitution from any of Dawson's co-schemers as part of their pre-trial diversion agreements. Furthermore, the government represented that, at this time, it has no intention of seeking restitution from any of those parties. Were that to change, and were Dawson's co-schemers to pay Rush Hospital any amounts in restitution, we expect that the government would notify Dawson of that occurrence so that she could properly file a request for modification of restitution. See 18 U.S.C. sec. 3664(j)(2). However, until such time, we find that the district court's decision

to hold Dawson accountable for the entire $175,089--the amount she acknowledged was owed to Rush Hospital--is in accordance with the MVRA's rules regarding apportionment of liability. See 18 U.S.C. sec. 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution . . . ."). Thus, we affirm the decision of the district court.

B.  Retroactive Application Of The MVRA

   Dawson's second argument on appeal is that the district court retroactively applied the MVRA to her case, and in doing so violated the constitutional prohibition against imposition of ex post facto laws. Specifically, Dawson points out that the her acts of mail fraud were alleged to have transpired between June 13, 1990 and June 22, 1993, and that the fraud referenced in Count One of the indictment (to which Dawson pled guilty) occurred on May 23, 1993. At that time, the Victim and Witness Protection Act ("VWPA") governed the district court's authority to order restitution. See 18 U.S.C. sec. 3663 (1993). Under the VWPA, district courts were authorized, but not required, to order restitution. See Newman, 144 F.3d at 537. Crucial to the discretionary decision was the defendant's financial standing. "Before a district court could order any restitution, the old Act required the court to determine how much, if any, restitution a defendant could make in light of 'the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.'" Id. (citing 18 U.S.C. sec. 3663(a)(1)(B)(i)(II) (1993)).

   Dawson does not dispute that the MVRA discarded this discretionary balancing system, directing that district courts "shall order" restitution. See 18 U.S.C. sec. 3663A(a)(1) & (b). Under the MVRA, a defendant's financial status is relevant only to fixing a payment schedule for the mandated restitution payments. See 18 U.S.C. sec. 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as

determined by the court and without consideration of the economic circumstances of the defendant."). At the time of Dawson's sentencing, in October of 2000, the MVRA was in effect. Dawson suggests that the district court applied the MVRA in ordering restitution, and therefore did not analyze her financial condition prior to finalizing its order. Thus, she asserts that, in this instance, application of the MVRA has increased the punishment for her criminal conduct, thereby creating a violation of the prohibition against ex post facto laws.

We review the district court's decision to apply the MVRA to Dawson's charged conduct de novo./1 See Newman, 144 F.3d at 538. Unfortunately for Dawson, the question of whether retroactive application of the MVRA constitutes a violation of the Ex Post Facto Clause is a settled issue in this Circuit. In Newman, we extensively examined the prob lem, and concluded that the Clause was not violated when a district court imposed restitution pursuant to the MVRA for actions which occurred prior to the effective date of the law. See Newman, 144 F.3d at 537-42. In that decision, we acknowledged, and found unpersuasive, the arguments in favor of finding that the MVRA could not be applied retroactively without violating the Ex Post Facto Clause, as well as the fact that our decision was not in accord with those of other Circuits. See id.; see also United States v. Edwards, 162 F.3d 87, 89-90 (3d Cir. 1998) (collecting cases).

Since that time, the holding of Newman has been affirmed by this Court in cases such as United States v. Grimes, 173 F.3d 634, 640 (7th Cir. 1999), United States v. Bach, 172 F.3d 520, 523 (7th Cir. 1999), and United States v. Szarwark, 168 F.3d 993, 998 (7th Cir. 1999). While Dawson has presented a bevy of reasons why retroactive application of the MVRA violates the Ex Post Facto Clause, we have expressly found those justifications unpersuasive in Grimes, Bach, Szarwark, and Newman. Thus, we find that Dawson has presented no compelling justification for us to revisit the holding of Newman and its progeny.

III. CONCLUSION

For the foregoing reasons, we Affirm the

decision of the district court.

FOOTNOTE

/1 The government argues that Dawson's agreement to pay restitution constitutes a forfeiture of her challenge to the propriety of retroactive application of the MVRA. As such, the government asserts that correct standard of review is plain error rather than de novo. See United States v. Olano, 507 U.S. 725, 733-34 (1993). Because we find that law of our Circuit forecloses Dawson's claims under either standard of review, we will assume arguendo that Dawson's actions did not constitute a forfeiture of her issue, and analyze the claim under the de novo standard.