UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2005
Decided June 3, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3230

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 01-CR-58 |
| TANYA BATES, *Defendant-Appellant.* | Charles N. Clevert, Jr., *Judge.* |

**O R D E R**

Tanya Bates was convicted on two counts of using another person's social security number with the intent to deceive, in violation of 42 U.S.C. § 408(a)(7)(B). At sentencing the district court ordered Bates to pay $6,493 in restitution arising from a failed real estate transaction involving Coldwell Banker Residential Brokerage. Bates now appeals, challenging the restitution order. We affirm.

Bates (along with another woman, Gloria Baxter) contracted to purchase a residence in Milwaukee, Wisconsin, for $75,000. In connection with the transaction, Bates lied about her name and social security number on a buyer information form she completed for Coldwell, the seller's realtor. On November 21, 2000, Bates and Baxter (who used her true name and social security number) gave Coldwell a counterfeit check purportedly drawn on an account of investment broker

Charles Schwab to cover the $2,000 earnest money required for the purchase. Coldwell, which also acted as the settlement agent at the closing on November 30, then accepted a counterfeit cashier's check in the amount of $73,798 to cover the balance of the purchase price plus Bates and Baxter's share of the closing costs. Coldwell deposited the two checks in its own account and in turn paid off the seller's mortgage, paid a small amount due the City of Milwaukee, and remitted the balance of the purchase price (less its commission and the seller's share of the closing costs) to the seller. At this point Coldwell's actual cash outlays were $68,570.

Five days after closing, on December 5, the $2,000 check drawn on the Charles Schwab account was dishonored and returned to Coldwell. Coldwell alerted Baxter, who replaced the first $2,000 check with yet another counterfeit check in the same amount. Only later did Coldwell learn that the this replacement check and the cashier's check it received at closing were also counterfeit.

Once Coldwell discovered the fraud, it requested that the seller and her mortgage company refund the money Coldwell paid them at closing, but neither acceded. Rather than seek recourse against the seller and mortgage company, Coldwell instead accepted a quitclaim deed from the seller. Coldwell finally succeeded in selling the property in April 2002 for a contract sales price of $74,500.

This failed real estate transaction and another similar one involving a different residence led to the § 408 charges against Bates. Her plea agreement provides that Bates "agrees to pay" restitution to Coldwell, but at the same time incorrectly characterizes the restitution obligation as "mandatory." In May 2002 the district court sentenced Bates to 30 months' imprisonment and, applying the Mandatory Victim Restitution Act, *see* 18 U.S.C. § 3663A, ordered her to pay Coldwell $77,798 (the aggregate face value of the three counterfeit checks), even though Coldwell had sold the residence the previous month. Bates appealed, and the government filed an unopposed motion to remand for resentencing, which we granted. *United States v. Bates*, No. 02-2284 (7th Cir. Dec. 19, 2003). In its motion the government conceded that restitution was not mandatory (the mandatory act applies only to crimes of violence and other enumerated offenses that excludes Title 42 violations, 18 U.S.C. § 3663A(a)(1), (c)(1)) and that regardless the amount of the award was overstated.

In June 2004 the district court resentenced Bates. This time the court recognized that the mandatory act was not applicable. The court observed, however, that the Victim Witness Protection Act ("VWPA") permits restitution in Title 42 prosecutions "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(1)(A), (a)(3). The court then set the amount of the award at

$6,493, even though Coldwell had sold the residence for $5,929 more than it paid out at the November 2002 closing. According to Coldwell, that surplus was more than absorbed by $12,422 in closing costs on resale plus the property taxes it paid during the year it held the residence.

On appeal Bates first contends that restitution is not authorized for her Title 42 offense. She also argues that Coldwell could not have suffered any compensable loss since she never took possession or acquired clear title to the residence in exchange for her fraudulent checks. In her view the additional closing costs and taxes paid by Coldwell are best viewed as incidental or consequential damages resulting from the commonplace failure of a real estate transaction, not actual losses attributable to her fraud. She apparently contends that Coldwell was made whole—and § 3663 was satisfied—when the realtor took title to the property from the seller after the sale to her and Baxter collapsed. *See* 18 U.S.C. § 3663(b)(1) ("in the case of an offense resulting in damage to or loss or destruction of property," order of restitution may require that defendant "return the property to the owner of the property or someone designated by the owner").

We review de novo questions about the authority to order restitution under § 3663. *See United States v. Dawson*, 250 F.3d 1048, 1050 (7th Cir. 2001). The government bears the burden of proving a loss, and any dispute regarding the amount is resolved by the district court by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e). If restitution is authorized, we review the district court's determination of the amount for clear error. *See Id.* at 1051. We have observed that restitution is intended to compensate victims for "the amount of loss sustained," 18 U.S.C. § 3663(a)(1)(B)(i)(I); *see also United States v. Scott*, 405 F.3d 615, 619 (7th Cir. 2005); *United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005); *United States v. Shepard*, 269 F.3d 884, 887 (7th Cir. 2001); *United States v. Mischler*, 787 F.2d 240, 245 (7th Cir. 1986).

The first question Bates poses here is whether Coldwell suffered a loss "as a result" of the offense of conviction. *See* 18 U.S.C. § 3663(a)(1)(B)(i)(I). Bates contends that the amount claimed by Coldwell "is not directly related" her Title 42 conviction. What Bates means by this is unclear, and she does not elaborate beyond suggesting that the "sale of property falls through on a regular basis." Although a court must find a "direct nexus" between the offense of conviction and the asserted loss to trigger restitution under § 3663, *United States v. Randle*, 324 F.3d 550, 556 (7th Cir. 2003), a defendant may also consent to pay restitution under § 3663(a)(3), *United States v. Wells*, 177 F.3d 603, 607-08 (7th Cir. 1999). Bates does not contest the government's argument that she gave such consent as part of her plea agreement, and so the district court was authorized to order restitution. *See id.* Moreover, Bates's fraudulent use of a social security number placed Coldwell in the

position of incurring costs related to the sale of a residence that it never intended to possess, satisfying our requirement that a nexus exist between the offense of conviction and the asserted loss.

Only the amount of restitution, then, is really in dispute.  Bates insists that Coldwell did not suffer any compensable loss because it ended up with the residence, and that the "loss" claimed by the realtor in fact consists of unrecoverable "incidental and consequential damages" and "lost profits."

Bates, though, did not take a house from Coldwell; she caused the realtor to lose cash, but cash is not what was "returned" to Coldwell.  Coldwell assumed temporary ownership of the residence only as a means of mitigating Bates's fraud, and so long as Coldwell possessed a residence it did not want instead of the funds Bates caused it to expend, the realtor was not made whole—Bates's fraud placed Coldwell in the position of real estate seller rather than realtor.  *See United States v. Himler*, 355 F.3d 735, 744-45 (3d Cir. 2004) (upholding award of monetary restitution to settlement company even though residence conveyed to defendant in fraudulent transaction had been deeded back, because settlement company was not original seller of residence and defendant had contracted to pay an inflated price that could not be obtained on resale).

Bates, moreover, has not advanced a legal basis for challenging the line items comprising the restitution award.  In her appellate brief she does not differentiate between components of the $6,493 total awarded Coldwell, and at oral argument the only aspect Bates singled out was Coldwell's commission on resale.  Arguments advanced for the first time at oral argument are waived, *see United States v. Blackman*, 199 F.3d 413, 416 n.4 (7th Cir. 1999), and thus Bates cannot challenge the restitution award on this basis.

Accordingly, the order to the district court is **AFFIRMED**.