[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 26, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 04-15061
Non-Argument Calendar

_____

D. C. Docket No. 04-60117-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK ANDREW HERMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 26, 2005)**

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Mark Andrew Herman appeals his 51-month concurrent sentences for one count of intent to defraud effecting transactions of more than $1,000 in a one-year period with unauthorized access devices, 18 U.S.C. § 1029(a)(5) (Count 2), and two counts of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Counts 3-4). He raises two grounds on appeal, the first that the district court plainly erred by sentencing him under a mandatory, not advisory guidelines regime in light of United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The second is that the district court erred by failing to order the government to offset the amount of restitution ordered to the victims by an amount of proceeds which Herman forfeited to the government. For the reasons set forth more fully below, we affirm.

Herman pled guilty by written agreement to the charges mentioned above. The indictment also included a provision for the forfeiture of, inter alia, $34,000 in currency seized on March 25, 2004, during a search of Herman's residence. The victims of Herman's fraud offense were American Express and Bank of America.

A PSI was completed, and it found first that Count 2 (intent to defraud) could not be grouped with the other Counts of conviction and, thus, Count 2 was treated separately. Herman's base offense level for Count 2 was set at 6, pursuant to U.S.S.G. § 2B1.1(a)(2). His offense level was then increased 6 levels because

2

the loss was more than $30,000 but less than $70,000, and an additional 2 levels because the offense involved the possession of 5 or more means or identification unlawfully produced from other means of identification. Thus, his adjusted offense level for Count 2 was 14.

Counts 3 and 4 (felon in possession of a firearm) were grouped, and the base offense level was set at 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A). Next, the offense level was increased one level, pursuant to the grouping provisions found at U.S.S.G. § 3D1.4, for an adjusted offense level of 21. Herman was given a three-level reduction for acceptance of responsibility, U.S.S.G. §§ 3E1.1(a)-(b), for a total offense level of 18. At total offense level 18, criminal history category V, Herman's applicable guidelines range was 51-63 months' imprisonment. Finally, the PSI noted that restitution was required to be ordered pursuant to U.S.S.G. § 5E1.1 and 18 U.S.C. § 3663A(a)(1), in the amount of $38, 857.63, with $37,957.63 to be paid to American Express and $900 to be paid to Bank of America. Herman lodged no objections to the PSI.

At sentencing, Herman moved for a downward departure from criminal history category V to category IV, arguing that the pattern and timing of his prior convictions reflected a correlation with his alcohol abuse. The district court, after noting that U.S.S.G. § 5H1.4 seemed to preclude departure based on alcohol

3

dependence, explicitly overruled the motion, stating that "drug or alcohol dependency or abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit the crime. . . . [T]herefore, we shouldn't reward him [with] a downward departure."

Next, Herman, seemingly contrary to his agreement with the government that forfeiture of assets would not be treated as satisfaction of restitution, requested that the $34,000 forfeited to the government be applied against his restitution. However, when the court asked whether the amount seized was the same money that he stole, Herman replied, "some of the money is and some of the money isn't." The court then asked the government why the amount, if its known, couldn't just be deducted from the restitution. The government responded that, under the Mandatory Victim's Restitution Act, Herman was not entitled to an offset against the restitution order for the value of the forfeited money because the amount of restitution to be ordered under the Act was mandatory, while the forfeiture was a separate issue altogether and not to be used to offset restitution, citing persuasive authority United States v. Alalade, 204 F.3d 536 (4th Cir. 2000). The court then heard from the probation officer, who stated:

> In terms of offsets or credits or forfeited amount being used [to pay restitution], that can be worked out later on; but for sentencing purposes, you have to order that he has to pay the restitution. How it is actually done can be worked out later on between the parties.

4

The court next asked the probation officer if Herman could pay the restitution out of forfeited assets, to which the officer replied:

> [From] what I was told, basically that would be the Government's call. It was forfeited to them. Really, only they can make that determination. They were willing to forfeit that. But in terms of your sentencing purposes, that really doesn't have to be an issue at this point because we are basically saying this is the amount of restitution he is liable for and however it is satisfied, they can work that out down the road.

The court's final question was what Herman's remedy would be if the government did not agree to use the proceeds from the forfeiture to offset the restitution, i.e., would Herman be required to come back into court and have the court relieve him of any excess restitution. The officer replied that such a remedy could be an option, and Herman "could come back on that issue later on."

Herman's counsel agreed: "It could be done that way. I just wanted to see if I could resolve it today." The court stated that, "it does make sense to me that . . . he shouldn't have to pay twice." The court ultimately ruled that it would "see what the Government does. If they don't [offset the amount], you can come back and we can determine the restitution amount."

The court then sentenced Herman to 51 months' imprisonment on each count to run concurrently, and ordered full restitution in the amount of $38,857.63, to be paid from either wages earned in prison or a $25 payment toward his

financial obligations as mentioned in the order. Upon his release, Herman would be required to pay restitution at the rate of 10% of his monthly gross earnings until and unless the court altered that payment. Herman had no objection to either the court's findings of fact or the manner in which his sentence was imposed. An order of forfeiture was subsequently entered pursuant to 21 U.S.C. § 853 and Fed.R.Crim.P. 32.2(b), forfeiting, inter alia, $34,000 to the government.

Herman's first argument on appeal is that the district court plainly erred under United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) by sentencing him under a binding, mandatory guidelines system instead of an advisory one. Specifically, Herman argues that the court sentenced him on the basis of a range calculated under the guidelines, gave him a period of supervised release even though none was required, and denied him a downward departure in reliance on the plain language of U.S.S.G. § 5H1.4. Citing the Fourth Circuit case of United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), he argues that his substantial rights were violated and that the fairness and integrity of the judicial proceedings have been seriously affected, requiring a remand.

While the instant case was pending on appeal, the Supreme Court issued its decision in Booker, finding that the mandatory nature of the Federal Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a

jury trial.  Booker, 543 U.S. at ___,125 S.Ct. at 749-51.  The Court ruled that sentencing courts nevertheless must consider the Guidelines together with the factors set forth in 18 U.S.C. § 3553(a) when imposing sentences.  Id. at ___, 125 S.Ct. at 765.  Section 3553(a) provides that district courts imposing a sentence must consider, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence, protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553(a).

The Court cautioned, however, that not every sentence will give rise to a Sixth Amendment violation, nor would every appeal lead to a new sentencing hearing.  Booker, 543 U.S. at ___, 125 S.Ct. at 769.  The Court instructed reviewing courts to apply "ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."  Id.

Because Herman failed to lodge an objection to his sentence based on Booker, Blakely, or any constitutional grounds, we will review for plain error only. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).  "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1298 (quotation and citation omitted).  "If all three conditions are met, an

7

appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Here, there were no enhancements to Herman's guidelines sentence based on facts that he did not admit, either by not disputing the factual matters in the PSI or by admitting to the facts in his plea agreement and, therefore, no Sixth Amendment violation occurred. We have held in a similar situation, however, that where a district court imposes a sentence under the formerly binding mandatory guidelines, there nevertheless exists plain statutory error under Booker. See United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). However, to prove that the error affected his substantial rights, Herman must demonstrate "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301. Where "[t]he record provides no reason to believe any result is more likely than the other," a defendant cannot prevail under plain error review. Id.

In the instant case, the record reveals that the district court sentenced Herman to the low end of the applicable guidelines range and denied him a downward departure, finding that Herman's alcohol abuse did not warrant a departure. In denying Herman a departure the court noted that, under Herman's

argument, the more a person committed crimes while abusing alcohol, the more likely he would be to get a departure, and further noted that the guidelines' policies indicated that substance abuse is "highly correlated to an increased propensity to commit the crime. They know what they are talking about."

Under these facts, it appears uncertain whether the binding nature of the guidelines affected Herman's sentence, as the district court, were we to remand the case, would be faced with the same facts, the same applicable guidelines range, and would still be required to consult the guidelines prior to sentencing. See, e.g., Rodriguez, 398 F.3d at 1300-01, 1306. Presumably the district court would also be required to consult the provisions governing departures, and could not, even if it were so inclined, ignore the fact that the principal reason Herman sought a departure was his alcohol abuse, explicitly listed as a prohibited reason for a departure in the guidelines' policy statements. See Booker, 543 U.S. at ___, 125 S.Ct. at 764 (noting that the Sentencing Act, 18 U.S.C. § 3553(a), requires judges to consider, inter alia, the pertinent Sentencing Commission policy statements); U.S.S.G. § 5H1.4 (policy statement) ("alcohol dependence or abuse is not a reason for a downward departure."). Thus, any departure from the guidelines range based on that factor would, arguably, be an error in the application of the guidelines themselves and grounds for appeal by the government. See United States v.

9

Crawford, No. 03-15136, manuscript op. at 7-9 (11th Cir. May 2, 2005) (holding that district courts must still consult the guidelines and, at a minimum, correctly interpret the guidelines and correctly calculate the guidelines sentencing range; cf. Rodriguez, 398 F.3d at 1296 (considering challenge to calculation of drug quantity under the guidelines).

Finally, the present case is unlike our decision in United States v. Dacus, where we found plain error because the district court had stated on the record that it would certainly have considered granting a downward departure under U.S.S.G. § 5K2.0 based on the defendant's substantial rehabilitation efforts if it had the legal authority to do so. Dacus, 04-15319, manuscript op. at 6 (11th Cir. May 3, 2005). In Dacus, the district court further stated that it would recommend whatever it could for the defendant in order to ensure he continued to receive the benefit of his rehabilitation efforts. Id. Here, the district court gave no indication that it would grant a departure, and even went so far as to quote the policy statement from the guidelines regarding alcohol dependency or abuse before concluding that it "shouldn't reward [Herman with] a downward departure."

The fact that a district court imposes a sentence within the guidelines range (even at the low end) does not, even where the court felt bound by the guidelines, satisfy the plain error standard. See Shelton, 400 F.3d at 1332 ("[t]o establish the

10

third prong takes something more than showing the district court sentenced within the Guidelines range and felt bound to do so, especially given that the Guidelines range remains an important factor in sentencing). In Shelton, this Court remanded under plain error review where the district court expressed on the record (1) its belief that the sentence it was required to impose under the guidelines was too severe; (2) its lament that the defendant's criminal history category was based on past charges instead of the actual nature of the crimes committed; and (3) its statement that the lowest possible sentence permitted under the guidelines was "more than appropriate. Id. Here, there is no comparable showing that the district court believed the sentence was too severe and, therefore, under Rodriguez and Shelton, Herman has failed to demonstrate that his substantial rights were violated.

Finally, to the extent Herman relies upon United States v. Hughes, 401 F.3d 540 (4th Cir. 2005) in support of his plain error argument, this Court has considered Hughes and found it unpersuasive. See Rodriguez, 398 F.3d at 1301-1304. Accordingly, we conclude that Herman has not met his burden under plain error review.

Next, Herman argues that the district court erred by failing to determine at the time of sentencing how much, if any, of the $34,000 he forfeited to the government should be used to offset the $38,857 owed in restitution. He argues

11

that the district court's failure to make a finding regarding how much of the forfeiture was owed to the victims was contrary to the goals and objectives of the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A(a) and 3664(f)(2).

However, the record reveals that at his sentencing hearing, Herman agreed to the court's proposal that Herman return to court for relief at a later date, if the government were to refuse to agree to apply forfeited funds belonging to the victims to Herman's restitution.[1]  Therefore, he is precluded from arguing on appeal that the court erred by failing to make an order regarding offset at the time

---

[1] In relevant part, the discussion at sentencing was as follows:

> THE COURT: Can he pay [restitution] out of the forfeited amounts?
>
> THE PROBATION OFFICER: For what I was told, basically that would be the Government's call. It was forfeited to them. Really, only they can make that determination. They were willing to forfeit that. But in terms of your sentencing purposes, that really doesn't have to be an issue at this point because we are basically saying this is the amount of restitution he is liable for and however it is satisfied, they can work that out down the road.
>
> THE COURT: Let's say the Government doesn't agree to that. What does he do? He just comes back to me and we agree – we just relieve him of the restitution amount in excess of –
>
> THE PROBATION OFFICER: I imagine they could do that. I'm not really certain down at that point but I imagine that could be an option, or he would still be liable for it down the road. I believe he could come back on that issue later on.
>
> [DEFENSE COUNSEL]: I agree, Judge. It could be done that way. I just wanted to see if I could resolve it today.

12

of his sentencing.

We see no impropriety in the action of the district court. As this Court has recognized, the MVRA allows defendants to petition for modification of restitution orders in appropriate circumstances. See Cani v. United States, 331 F.3d 1210, 1215 (11th Cir. 2003) (holding that 18 U.S.C. § 3664(k) allows defendant to petition district court to modify restitution order upon subsequent change in defendant's ability to compensate victim). See also 18 U.S.C. § 3664(j)(2) (mandating reduction in restitution order to account for amounts later recovered as compensatory damages in civil proceeding); United States v. Bright, 353 F.3d 1114, 1122-23 (9th Cir. 2004) (contemplating that forfeited funds later returned to the victim might appropriately be construed as "compensatory damages" under § 3664(j)(2), meriting subsequent reduction in restitution amount); United States v. Dawson, 250 F.3d 1048, 1050-51 (7th Cir. 2001) (noting that government must notify defendant of restitution to victim from other sources, in order that defendant may file request for modification of restitution under § 3664(j)(2)). Thus, under the circumstances here, the district court did not err in not determining, at the time of sentencing, if any offsets were due.

**AFFIRMED.**

13