# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1684

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRANCE MCCARTER,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 CR 835—**Elaine E. Bucklo**, *Judge.*

ARGUED FEBRUARY 25, 2005—DECIDED APRIL 27, 2005

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant was found guilty of attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), but also of attempted bank robbery in violation of the federal bank-robbery statute, 18 U.S.C. § 2113(a), and was given concurrent prison sentences of 188 months. The facts are colorful. Claudia Cahill, a nurse, drove her car into a parking garage near her place of work in Oak Park, Illinois, and parked on the fourth level of the garage. She

left the car and as she approached the elevator a masked man accosted her, pointed his gun at her, and ordered her to put her face against the wall, which she did. He rifled her purse but found only $13 and told her it wasn't enough. But then he found her ATM card and said, "I see you have a bank card; we're going for a little ride" (or words to that effect). He walked her to her car, still pointing the gun at her, and she got into the driver's seat and tried to close the door but he blocked the door with his left hand (the gun was in his right hand), and in doing so touched the driver's window. He then got into the back seat of the car and crouched down, pressing the gun against Cahill's back. She started to drive out of the garage but stopped on the second level when she saw a man and a woman with their one-year-old baby. She rolled down her car window and cried, "Please help me. I'm being robbed at gunpoint." The robber leapt from the car and pointed his gun at the man, threatening to shoot him, but instead ran away.

No one was able to identify the robber, but he had left a fingerprint on the car window and eventually this was matched with a fingerprint of the defendant's that was on file. Had the crime not been interrupted, and Cahill been forced to withdraw money from an ATM, she would have done so by inserting her card into the ATM, causing an electronic signal to be sent to Ohio, where the transaction would have been processed and a signal dispatched back to the ATM to enable her to withdraw cash from the machine.

The Hobbs Act criminalizes robbery and extortion that "in any way or degree obstructs, delays, or affects commerce." 18 U.S.C. § 1951(a). The defendant argues that since he never got near the ATM, he could not have violated the Act. That is wrong. The Hobbs Act expressly embraces attempts to obstruct commerce by robbery or extortion, *id.*, as well as the completed obstruction. So the question is merely

whether commerce would have been obstructed had the attempt succeeded. *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000); *United States v. Jamison*, 299 F.3d 114, 117-20 (2d Cir. 2002). It would have been. Had Cahill been forced to withdraw money from an ATM, the withdrawal would have been an interstate transaction, a transaction in commerce. *United States v. Lynch*, 367 F.3d 1148, 1157 (9th Cir. 2004) (per curiam); *United States v. Atcheson*, 94 F.3d 1237, 1243 (9th Cir. 1996); *United States v. Baker*, 82 F.3d 273, 275-76 (8th Cir. 1996). And Congress's commerce power, exerted to the full in the Hobbs Act, *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 408 (2003); *Stirone v. United States*, 361 U.S. 212, 215 (1960); *United States v. Peterson*, 236 F.3d 848, 851-52 (7th Cir. 2001), includes the power to forbid criminally motivated interstate transactions. *United States v. Lopez*, 514 U.S. 549, 558 (1995); *Perez v. United States*, 402 U.S. 146, 150 (1971); *United States v. Darby*, 312 U.S. 100, 113-14 (1941); *Brooks v. United States*, 267 U.S. 432, 436-39 (1925); *Hoke v. United States*, 227 U.S. 308, 320-23 (1913).

But did the defendant also attempt a bank robbery? That depends, first, on whether money in an ATM is "in the care, custody, control, management, or possession of, any bank," 18 U.S.C. § 2113(a), which obviously it is, *United States v. Blajos*, 292 F.3d 1068, 1071-72 (9th Cir. 2002); cf. *United States v. Jakalski* 237 F.2d 503, 505-06 (7th Cir. 1956) (money stolen from hired armored car service was bank's property); *United States v. King*, 178 F.3d 1376, 1378 (11th Cir. 1999) (same); *United States v. Damm*, 133 F.3d 636, 638-39 (8th Cir. 1998) (same), and, second, on whether forcing a customer to withdraw cash from an ATM is robbing the bank rather than robbing just the customer. If the depositor is robbed of the money he has just withdrawn after he leaves the bank, that is not a bank robbery. *United States v. Van*, 814 F.2d 1004, 1006-08 (5th Cir. 1987). But if, as the defendant

intended to do here, the robber forces the bank's customer to withdraw the money, the customer becomes the unwilling agent of the robber, and the bank is robbed. Cf. *Embrey v. Hershberger*, 131 F.3d 739 (8th Cir. 1997) (en banc).

It was redundant to charge the defendant under both the Hobbs Act and the bank-robbery statute, since both punish attempted bank robbery. Because there was only one trial, there is no (more precisely, there *should* not be any, *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 798-805 (1994) (dissenting opinion)) issue of double jeopardy. But the Supreme Court has held that there is a "component of double jeopardy protection" applicable to multiple sentences imposed in the same criminal proceeding, *Ohio v. Johnson*, 467 U.S. 493, 499 (1984), although it is a limited component: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Because every bank robbery is also a Hobbs Act violation and the maximum punishments are the same, it is unlikely that Congress wanted to allow the government to try to obtain a longer sentence (though the government failed here, since the judge imposed concurrent sentences, with a minor qualification noted below) just by charging a bank robber under the Hobbs Act as well as under the bank-robbery statute.

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court created a presumption that Congress does not intend the same act to be punished twice under separate statutes unless they have different elements. And the elements of the Hobbs Act and the bank-robbery statute are indeed different; the former requires that the robbery interfere with interstate commerce while the latter requires that the robbery be of a bank. The same physical act can

have multiple consequences addressed by different statutes, as in *United States v. Hatchett*, 245 F.3d 625, 630-42 (7th Cir. 2001), where the defendant was punished separately both for selling drugs and, by that sale, aiding and abetting his buyer to resell the drugs. But where, as in the present case, the consequences of the act are the same—namely, a bank is robbed—in fact are *always* the same, when the bank-robbery statute is violated—the fact that bank robbery is also punishable (and no more severely) under the Hobbs Act provides no rational basis for double punishment, as most cases hold. *United States v. Holloway*, 309 F.3d 649, 651-52 (9th Cir. 2002); *United States v. Golay*, 560 F.2d 866, 869-70 (8th Cir. 1977); *United States v. Beck*, 511 F.2d 997, 1000 (6th Cir. 1975); contra, *United States v. Maldonado-Rivera*, 922 F.2d 934, 982-83 (2d Cir. 1990).

And we know from cases such as *Garrett v. United States*, 471 U.S. 773, 779 (1986); *Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Busic v. United States*, 446 U.S. 398, 405-07 (1980), and *Simpson v. United States*, 435 U.S. 6, 13-15 (1978), that legislative history which clearly indicates an intention regarding whether to permit multiple punishment is entitled to weight. When in 1986 Congress amended the bank-robbery statute to make clear that it forbade extortion (as in threatening the family of a bank official in order to induce him to take money from the bank) as well as outright robbery, the House committee report on the amendment stated that its purpose was "to overrule . . . those cases holding that both the Hobbs Act and [the bank-robbery statute, i.e., 18 U.S.C. § 2113(a)] apply, in order to make [the bank-robbery statute] the exclusive provision for prosecuting bank extortion." Criminal Law and Procedure Technical Amendments Act of 1986, H.R. Rep. No. 99-797, at 32-33, reprinted in 1986 U.S.C.C.A.N. 6138, 6155-56. The implication was that bank robbery, too, would be prosecuted

exclusively under the bank-robbery statute; indeed, that would be an *a fortiori* case.

*Maldonado-Rivera*, the outlier—the only case to hold that bank robbery may be punished separately under both statutes—did not mention this legislative history. *Holloway*, while agreeing with the majority view that separate punishment is forbidden, said that "the committee report emphasizes that 18 U.S.C. § 2113(a) is being made exclusive only as to 'bank extortion.'" 309 F.3d at 651. That makes it sound as if the report indicated that Congress wanted bank robbery to be punishable separately under both statutes. But robbery wasn't before Congress; the statute addressed only bank extortion because it was resolving a conflict among the circuits on whether bank extortion could be punished separately under both statutes. The *logic* of the committee report extends equally to bank robbery.

The defendant failed to argue that bank robbery cannot be punished separately under both statutes, however; so he can obtain relief only if the court's error was a plain error. As we emphasized in *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005), an error that results in an unlawful prolongation of the defendant's prison term is a very serious error warranting correction as plain error. But an error that results merely in a concurrent sentence does not do that. There *might* be some consequence down the road of having a second conviction on one's record, but this is speculative and in fact unlikely, since the offense conduct was identical under the two statutes.

It is true that because a defendant must pay a separate $100 "special assessment" (paid into the Crime Victims Fund) for each felony, 18 U.S.C. § 3013(a)(2)(A); 42 U.S.C. § 10601(b)(2), concurrent prison sentences do now result in additional punishment. *Rutledge v. United States*, 517 U.S. 292, 301-03 (1996); *Ray v. United States*, 481 U.S. 736, 737

(1987) (per curiam). But the addition is not a longer prison sentence but a trivial fee. The erroneous imposition of it is not a serious enough error to be described as a miscarriage of justice and thus constitute plain error. *United States v. Gricco*, 277 F.3d 339, 350-51 (3d Cir. 2002); *United States v. Jackson*, 155 F.3d 942, 947-48 (8th Cir. 1998); see also *United States v. Hernandez*, 330 F.3d 964, 982-84 and n. 15 (7th Cir. 2003); *United States v. Lafayette*, 337 F.3d 1043, 1048-49 (D.C. Cir. 2003); *United States v. Ellis*, 326 F.3d 593, 599-600 and n. 6 (4th Cir. 2003).

The defendant's other challenges to his conviction do not have sufficient merit to require discussion. They are typified by his complaint that the judge refused to give an eye-witness instruction. Such an instruction tells the jury that when a witness claims to have identified the perpetrator of the crime, the jurors should consider carefully whether the witness really had the ability and opportunity to make the identification. There was no eyewitness evidence in this case. The defendant was masked and the witnesses to the crime could not identify him. The only evidence against him was the fingerprint evidence. But it was enough. *United States v. Bush*, 749 F.2d 1227, 1229-30 (7th Cir. 1984); *Schell v. Witek*, 218 F.3d 1017, 1022-23 (9th Cir. 2000); *Taylor v. Stainer*, 31 F.3d 907, 909-10 (9th Cir. 1994).

The government acknowledges, however, that the defendant's sentence violated the Sixth Amendment as interpreted in the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). The issue was not raised in the district court, and therefore the governing standard is again that of plain error. As it is possible that the judge would have given the defendant a lighter sentence had she realized that the federal sentencing guidelines are merely advisory, we order the limited remand prescribed by *United States v.*

*Paladino, supra*, 401 F.3d at 483-85. The bank-robbery conviction, however, is affirmed.

Should the district judge decide to resentence the defendant, she should take the opportunity to vacate his Hobbs Act conviction. But if she decides not to resentence him, that conviction too will stand, because as we said the error was not plain.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*