**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2006
Decided July 18, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-4390

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,* | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 05-CR-091-C-01 |
| JEFFREY J. MILLER,<br>*Defendant-Appellant.* | Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Jeffrey Miller pleaded guilty to mail fraud, 18 U.S.C. § 1341. In calculating his sentence, the district court applied the two-level enhancement for abuse of a position of trust. Miller challenges this enhancement, arguing that it was precluded because the base offense level and offense characteristics already addressed his abuse of a position of trust. We disagree and affirm the district court's sentence.

In 2005 Miller pleaded guilty to using the United States Postal Service to defraud clients of his investment firm, One Vision Financial ("OVF"). Miller's scheme was simple: from 2000 to 2004 he persuaded OVF's clients to invest substantial amounts of money in the firm's investment network or the investment portfolios it administered. But instead of investing the clients' funds in either, Miller converted them to his own personal use or used them to pay OVF's operating expenses. He then mailed his clients worthless promissory notes that recorded the

amount the client "invested" with OVF and promised an imaginary annual return. In all, Miller defrauded more than 40 clients of approximately $3.5 million.

The probation officer prepared a presentence investigation report in which she calculated the base offense level for Miller's conviction at 7 because the maximum imprisonment term was 20 years. *See* U.S.S.G. § 2B1.1(a)(1). The probation officer also recommended that the offense level be increased by 18 levels because the loss amount was between $2.5 million and $7 million, U.S.S.G. § 2B1.1(b)(1)(J); two levels because the offense involved ten or more victims, *id.* § 2B1.1(b)(2)(A); and two more levels because Miller abused a position of trust, *id.* § 3B1.3. This placed Miller's base offense level at 24, which, when combined with a criminal history category of I, placed Miller's recommended guidelines range between 87 and 108 months.

Miller objected to the presentence investigation report, arguing that the recommended increase for abuse of a position of trust ran afoul of § 3B1.3. That provision provides for a two-level increase when a "defendant abused a position of public or private trust . . . in a manner that significantly facilitated in the concealment of the offense." U.S.S.G. § 3B1.3. However, § 3B1.3 also states that "[t]his adjustment may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic." *Id.* Seizing on this exception, Miller argued that abuse of a position of trust is included in the base offense level for mail fraud, thus precluding the two-level increase.

At the sentencing hearing, the district court rejected Miller's objections and accepted the recommended two-level increase for abuse of a position of trust. The court stated that Miller exploited his position as a financial advisor to convince his victims to give him their money "in reliance of [his] representations or because [he] promised that [he] wold invest their money in [his] business." The court then adopted the recommended guidelines range of 87 to 108 months, sentenced Miller to 87 months' imprisonment, and ordered him to pay assessments and restitution.

On appeal, Miller renews his argument that the district court erred by applying the two-level increase under § 3B1.3. He asserts that, because the charging document detailed the manner in which he abused his position as a financial advisor to defraud his clients, his abuse of a position of trust was already accounted for in the base offense level and specific characteristics of mail fraud. In essence, he argues that courts must refer to the charging documents to ascertain the base offense level and specific offense characteristics. But this position is irreconcilable with the language of the Sentencing Guidelines: § 3B1.3 directs courts to refer only to "the base offense level or specific offense characteristic." *See* U.S.S.G. § 3B1.3. That provision contains no instruction to refer to charging documents, *see id.*, and Miller points us to no authority that states otherwise.

With that said, Miller's base offense level does not account for an abuse of a position of trust. Because Miller was convicted under 18 U.S.C. § 1341, his base offense level is determined by § 2B1.1. *See* U.S.S.G. app. A. This guideline addresses "basic forms of property offenses" involving numerous kinds of fraud, including mail fraud. *See* U.S.S.G. § 2B1.1 introductory cmt. Miller's counsel conceded at oral argument that mail fraud does not require an abuse of a position of trust. *See United States v. Baldwin*, 414 F.3d 791, 799 (7th Cir. 2005) ("It is true that all frauds involve deceit, but they may or may not involve the abuse of a position of trust."). This concession comports with our recognition that the two-level increase accounts for behavior separate from the predicate offense of fraud; that is, how the defendant exploited his relationship with his victims to perpetrate the fraud. *See United States v. Arnaout*, 431 F.3d 994, 1000 (7th Cir. 2005); *see also United States v. Bracciale*, 374 F.3d 998, 1006-07 (11th Cir. 2004) (explaining how commentary to § 3B1.3 "draws a distinction between those who should receive the enhancement and those who should not without regard to the elements of the underlying fraud offense"). And since Miller concedes that he abused his clients' trust in him as their financial advisor when committing mail fraud, the two-level enhancement was not precluded by the base offense level. *See Baldwin*, 414 F.3d at 799; *see also Bracciale*, 374 F.3d at 1005-06.

Likewise, Miller's specific offense characteristics do not account for his abuse of a position of trust. The district court increased Miller's base offense level by 18 levels because the victims' loss was between $2.5 million and $7 million, and added an additional two levels because Miller's offense involved ten or more victims. But both of these determinations do not reflect Miller's abuse of his position as a financial advisor because they do not account for how Miller exploited his relationship with his victims to defraud them. *See* U.S.S.G. § 3B1.3 cmt. n.1 ("For this adjustment to apply, the position of . . . private trust must have contributed in some significant way to facilitating the commission or concealment of the offense . . . ."); *Bracciale*, 374 F.3d at 1006-07 (stating that the applicability of two-level enhancement depends only on the relationship the defendant had with his victims). These determinations rather address the extent and severity of his fraud, facts unrelated to Miller's abuse of his victims' trust. *See Bracciale*, 374 F.3d at 1006-07.

AFFIRMED.