# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2798

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESSE JAMES PARKER, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 04 CR 92—**Allen Sharp**, *Judge.*

ARGUED JANUARY 12, 2007—DECIDED NOVEMBER 21, 2007

Before POSNER, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Jesse James Parker was convicted of making a false statement on a federal firearms form, being a felon in possession of a firearm, and being an illegal drug user in possession of a firearm. He raises four challenges to his convictions and sentence: that his trial violated the Speedy Trial Act, that his firearm possession convictions are multiplicitous, that he received ineffective assistance of counsel, and that his term of supervised release was imposed in violation of *United States v. Booker*, 543 U.S. 220 (2005).

We reject all but the multiplicity challenge. We agree that the two firearm possession convictions—under 18

U.S.C. § 922(g)(1) and (3)—are multiplicitous, as they arise from a single incident of firearm possession. Parker did not raise the multiplicity objection in the district court, however, so our review is for plain error. Parker was sentenced to concurrent prison terms on these counts but was subjected to an additional $100 special assessment for the second firearm possession conviction; we held in *United States v. McCarter*, 406 F.3d 460, 464 (7th Cir. 2005), that this is not a sufficiently serious error to warrant correction under the plain-error standard. *See also United States v. Baldwin*, 414 F.3d 791, 796 (7th Cir. 2005) (following *McCarter*). We now conclude that this holding is inconsistent with Supreme Court precedent and out of step with other circuits that have addressed the question. We therefore overrule this aspect of *McCarter* and *Baldwin*.[1] The case is remanded with instructions to vacate the sentence on one of the firearm possession counts and merge the two convictions.

## I. Background

Jesse James Parker was prohibited from possessing a firearm because he was a convicted felon. On January 29, 2004, Parker paid Mamie Army $100 to complete a straw purchase of an AK-47 assault rifle for him. At Parker's direction and with money he supplied, Army went into a gun shop and bought the rifle, falsifying a federal firearms sale form by identifying herself as the purchaser. She then turned the rifle over to Parker. Parker later

---

[1] Because this decision overrules existing Seventh Circuit precedent, it was circulated to the active members of the court in accordance with Circuit Rule 40(e); no judge in regular active service voted to hear the case en banc. The Hon. Joel M. Flaum and the Hon. Kenneth F. Ripple did not participate in the consideration of this matter.

confessed his involvement in this scheme to federal agents, and also told them that he smoked marijuana regularly around the time of the straw purchase. Based on these facts, a jury found Parker guilty of one count of aiding and abetting a false statement on a federal firearms form, 18 U.S.C. § 922(a)(6); one count of being a felon in possession of a firearm, *id.* § 922(g)(1); and one count of being an illegal drug user in possession of a firearm, *id.* § 922(g)(3).

## A. Pretrial Proceedings

Certain pretrial dates and events are important to our resolution of Parker's Speedy Trial Act claim. The three charges brought against Parker were counts four through six of an indictment that included five other defendants: Army, Devin Smith, Frederick Williams, Michael Griffis, and Kathleen Miller. After being indicted, Parker first appeared before a magistrate judge in the Northern District of Indiana on October 20, 2004. At that time, the government moved to detain Parker, and the court scheduled a hearing on that motion for October 25 to give Parker time to obtain counsel. When that date arrived, Parker had yet to obtain counsel, so the court rescheduled the hearing for October 28. On that date, Parker again appeared alone and requested appointment of counsel; the court granted the request and rescheduled the hearing for November 1. The detention motion was finally heard on November 1, and Parker was detained after pleading not guilty. That same day, Williams filed a motion to suppress evidence, which was denied on November 29. Codefendants Miller and Smith filed petitions to enter guilty pleas on October 29, as did Griffis on November 5, Army on November 23, and Williams on January 13, 2005. Their pleas were accepted on the following dates: Miller on November 16, Smith and Griffis

on November 17, Army on December 13, and Williams on January 14. In sum, the motions and plea petitions of Parker's codefendants were pending from October 29 through December 13, 2004, and on January 13 and 14, 2005.

In the meantime, Parker's trial was scheduled to begin on January 18. At the final pretrial conference on January 13, the judge informed the parties he would be unavailable for about four to six weeks beginning January 17 for medical reasons. He proposed a new trial date of February 22, but Parker's counsel indicated he was unavailable. Trial was then scheduled to commence February 24. On February 18, the government filed a motion to allow a law student to participate in the trial; that motion was granted on February 22. On February 23, Parker filed a motion to dismiss under the Speedy Trial Act, claiming that more than the 70 allowable days had elapsed since his first appearance. The district court denied Parker's motion the same day it was filed, stating that the trial date "was set in open court with this defense counsel present" and "[i]f present defense counsel thought there was a Speedy Trial problem he should not have waited until the eve of trial to bring it up." The court made no findings regarding the number of countable days that had elapsed while Parker was waiting to be tried.

## B. Trial Proceedings

Trial commenced as scheduled on February 24. That morning, Parker's counsel provided the government with an affidavit from codefendant Williams, who was scheduled to testify against Parker, purporting to recant his

prior statements implicating Parker.[2] Counsel admitted the document had been obtained from Williams outside the presence of Williams's counsel while Parker and Williams were incarcerated in the same facility. Parker's counsel informed the court that Parker told him during one of his prison visits that Williams was going to sign an affidavit. During that visit, a prison employee entered the room where Parker and his counsel were meeting and informed them he was bringing a typed document to Williams. The employee returned shortly thereafter with an affidavit signed by Williams. Parker's counsel acknowledged that this had occurred more than a month and half prior to trial; his explanation for not disclosing it earlier was that he was uncertain whether Williams would testify.

The district court expressed concern about the manner in which the affidavit was obtained and the attorney's failure to disclose it sooner. The judge barred any mention of the affidavit during opening statements and further stated he was inclined to preclude use of the affidavit for impeachment purposes but would defer ruling until Williams testified. Trial proceeded, with the court recess-

---

[2] The affidavit stated, in relevant part:

> 2. That the A.T.F. had said they had interviewed me and that I had made incriminating statements on behalf of of [sic] Jesse Parker.
>
> 3. I swear under penalty of perjury that the statements here are true.
>
>> a.   That Jesse Parker had no interaction in the above cause.
>>
>> b.   That the statement they said I made implicating Jesse Parker are [sic] false.
>>
>> c.   That in count 4, 5, and 6, Mr. Parker had no participation.

ing during Williams's cross-examination to make a final ruling on the affidavit. The court ultimately concluded the affidavit itself could not be admitted, but Parker's counsel could cross-examine on its contents, and the prosecution could question Williams on the circumstances under which the recantation was made. Williams testified that he recanted to dispel rumors that he had implicated Parker as "a big time drug dealer . . . buying all of these guns and putting them on the street and stuff." However, he stood by his testimony that Parker had paid Army to purchase the single AK-47 as charged in the indictment.

## C. Posttrial Proceedings

Parker was sentenced to concurrent 27-month prison terms and two years of supervised release; he was also ordered to pay a $100 special assessment for each of the three offenses. In imposing supervised release, the district court said that "a term of supervised release is not only required but also is appropriate in this case." Parker filed a timely notice of appeal, but his trial counsel moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he saw no nonfrivolous basis for appeal. Parker filed a response seeking new counsel for his appeal because his trial counsel faced a potential conflict of interest regarding the matter of Williams's affidavit. We agreed and ordered the appointment of new appellate counsel. *United States v. Parker*, No. 05-2798 (May 3, 2006). Parker's counsel now raises the following challenges on appeal: whether a Speedy Trial Act violation occurred; whether Parker's convictions for being both a felon and drug user in possession of a firearm are impermissibly multiplicitous; whether Parker's trial counsel was ineffective; and whether the district court erred in imposing a term of supervised release under the mistaken belief that supervised release was mandatory.

## II. Discussion

### A. Speedy Trial Act Violation

The Speedy Trial Act ("the Act") provides that no more than 70 days may elapse between a defendant's initial appearance in court and the commencement of trial. 18 U.S.C. § 3161(c)(1). The district court made no factual findings regarding how many countable days elapsed, and the parties dispute the proper method of calculation. "We review the district court's denial of Speedy Trial Act motions *de novo* when calculation of time is at issue." *United States v. Baskin-Bey*, 45 F.3d 200, 203 (7th Cir. 1995).

Although a total of 126 days elapsed between Parker's first appearance in court and the commencement of his trial, not all of this time counts toward the Act's 70-day limitation. The parties agree that the delay attributable to pleas by Parker's codefendants is excluded. *See* 18 U.S.C. § 3161(h)(7) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"); *United States v. Dennis*, 737 F.2d 617, 620 (7th Cir. 1984) ("It is well established . . . that the excludable delay of one defendant may be ascribed to all codefendants in the same case, absent severance."). The parties also agree that the time lost due to the judge's medical absence is *not* excludable because the judge did not follow the procedures necessary to stop the Speedy Trial clock. *See* 18 U.S.C. § 3161(h)(8) (requiring court to make findings on the record to exclude a delay resulting from court's own motion); *cf. Zedner v. United States*, 126 S. Ct. 1976, 1990 (2006) ("[W]hen a district court makes no findings on the record in support of a[ ] § 3161(h)(8) continuance, harmless-error review is not appropriate."). The undisputed exclusions thus total 46 days, which brings the uncontested elapsed time to 80 countable days.

Where Parker and the government part ways is on the question of when the Speedy Trial Act clock began to run. Parker maintains the clock started on October 20—the date of his first appearance in court—and includes the 11 days that elapsed between this appearance and his arraignment on November 1. The government contends the clock did not begin to run until Parker's arraignment. Parker has the better of this argument. The Act states that the clock runs from "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). A straightforward application of this language means that the clock began to run on October 20, the first "date [Parker] appeared before a judicial officer" of the charging court.

The government seeks to override this language by pointing to the many cases in which we have stated that the Speedy Trial Act clock commences at arraignment. *See, e.g.*, *United States v. Larson*, 417 F.3d 741, 744 (7th Cir. 2005) ("The Act provides that no more than 70 days may elapse between arraignment and the commencement of trial."); *United States v. Garrett*, 45 F.3d 1135, 1138 (7th Cir. 1995) ("Where more than one defendant is charged in an indictment, the Speedy Trial clock begins running on the date of the last co-defendant's arraignment."); *Baskin-Bey*, 45 F.3d at 203 ("The Speedy Trial Act provides that no more than seventy days may elapse between arraignment and the start of trial."). However, none of these cases concerns a defendant who appeared before a judicial officer *prior to* arraignment, as Parker did. As such, they do not address the distinction between arraignment and any earlier initial appearance in court for purposes of the Speedy Trial clock. Rather, these cases illustrate nothing more than the habit of using "arraignment" as shorthand for "appearance before a judicial

officer." On the disputed issue of when the Speedy Trial clock commenced in this case, we agree with Parker that it was triggered by his October 20 initial appearance before the magistrate judge.

But the analysis does not end there. Section 3161(h)(1)(F) of the Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."[3] The government moved for Parker's detention on October 20, and the hearing on that motion did not take place until November 1. Because this pretrial motion was pending throughout the time that elapsed between Parker's initial appearance and his arraignment, the 11 days do not count toward his Speedy Trial clock. *See United States v. Wright*, 990 F.2d 147, 149 (4th Cir. 1993) (excluding time during which government's temporary detention motion was pending). Excluding these 11 days, a maximum of 69 days elapsed prior to Parker's trial; there was no violation of the Speedy Trial Act.[4]

## B. Multiplicity Claim

Parker next argues his two firearm possession convictions—one under § 922(g)(1) for being a felon in posses-

---

[3] Although neither party briefed the applicability of 18 U.S.C. § 3161(h)(1)(F) to the 11 days in question, "[a]s with all statutes, we must interpret the Speedy Trial Act to give effect to the entire statute." *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004).

[4] The parties also dispute whether to exclude the five days during which the government's motion to allow a law student to participate was pending. We need not address the dispute; including those days leaves the total at 69 days.

sion and one under § 922(g)(3) for being an illegal drug user in possession—are impermissibly multiplicitous because they arise from a single incident of firearm possession involving the same gun. This objection was not raised at trial or at sentencing, so our review is limited to plain error.[5]

Our circuit has not addressed the question of whether a single incident of firearm possession may support multiple convictions under § 922(g) when the defendant is included in more than one class of persons the statute disqualifies from possessing firearms. We have concluded that a single incident of possession of a firearm *and* ammunition cannot support multiple convictions under § 922(h). *See United States v. Oliver*, 683 F.2d 224, 233 (7th Cir. 1982) (the language of § 922(h) contains "no indication that Congress intended firearms and ammunition to be treated as separate violations"); *see also United States v. Guice*, 238 F. App'x 167 (7th Cir. 2007) (two § 922(g)(1) convictions for guns found in passenger compartment and trunk of defendant's car are multiplicitous; no evidence suggested defendant acquired the guns at separate times).

Those circuits that have addressed the question are in unanimous agreement that § 922(g) cannot support multiple convictions based on a single firearm possession because the allowable unit of prosecution is the incident

---

[5] In his reply brief, Parker argues our review must be de novo because a multiplicity claim cannot be waived. Parker has confused waiver—the intentional relinquishment of a right—with forfeiture—the failure to make a timely assertion of a right. *See United States v. Summers*, 265 F.3d 532, 537 (7th Cir. 2001). It is the well-established law of this circuit that forfeiture of a multiplicity claim will result in plain-error review. *See United States v. McCarter*, 406 F.3d 460, 464 (7th Cir. 2005).

of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession. *See United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (en banc) ("Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition."); *accord United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000); *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998); *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997); *United States v. Munoz-Romo*, 989 F.2d 757, 759-60 (5th Cir. 1993); *United States v. Winchester*, 916 F.2d 601, 607-08 (11th Cir. 1990). The government concedes this reading of § 922(g) is correct, and we agree. Although the government is free to pursue multiple theories of violation at trial, *see Ball v. United States*, 470 U.S. 856, 860 n.7 (1985), only one conviction may result under § 922(g) for a single incident of possession, even though the defendant may belong to more than one disqualified class.

The government nonetheless maintains Parker's multiplicitous punishment for the two § 922(g) convictions may stand because he received only a concurrent sentence and an additional $100 special assessment. We held in *McCarter* that imposition of a multiplicitous concurrent sentence and $100 special assessment "is not a serious enough error to be described as a miscarriage of justice and thus constitute plain error." 406 F.3d at 464 ("There *might* be some consequence down the road of having a second conviction on one's record, but this is speculative . . . . "); *see also Baldwin*, 414 F.3d at 796 (following *McCarter*).

Parker argues that our precedent is both inconsistent with Supreme Court precedent and out of step with our sister circuits. He is correct. The Supreme Court has

rejected the argument that a concurrent sentence with only a $50 assessment is too insignificant a consequence to warrant vacating a multiplicitous conviction. *See Rutledge v. United States*, 517 U.S. 292, 302 (1996) ("[T]he collateral consequences of a second conviction make it as presumptively impermissible to impose as it would be to impose any other unauthorized cumulative sentence."); *accord Shea*, 211 F.3d at 673 (applying plain-error standard to require remittance of $50 assessment for multiplicitous § 922(g) conviction); *Dunford*, 148 F.3d at 390.

Although *Rutledge* did not specifically mention the standard of review, the procedural posture of the defendant's multiplicity challenge makes the Court's holding the equivalent of plain-error review. The Court noted in *Rutledge* that the only consequence of the multiplicitous conviction in that case was a concurrent sentence and an extra $50 special assessment, and the defendant "did not challenge the assessment below." *Rutledge*, 517 U.S. at 302. The Court went on to hold, despite the forfeiture, that the extra special assessment was "as much a collateral consequence of the [multiplicitous conviction] as the consequences recognized by *Ball* would be. As a result, the conviction amounts to cumulative punishment not authorized by Congress." *Id.* at 302-03. The Court's cross-reference to *Ball* is significant; there, the Court held that a multiplicitous conviction must be vacated *regardless* of whether an increased sentence or extra assessment was imposed, based on the stigma, impeachment potential, and effect on future sentencing or parole eligibility, which the Court characterized as "potential adverse collateral consequences that may not be ignored." *See Ball*, 470 U.S. at 864-65.

Based on *Ball*, the *Rutledge* Court concluded that one of the multiplicitous convictions must be vacated, despite

the lack of a multiplicity objection at sentencing, and even though it carried only a concurrent sentence and extra special assessment. *Rutledge*, 517 U.S. at 307. Because the plain-error analysis in *McCarter* and *Baldwin* is in conflict with the Supreme Court's conclusions in *Rutledge* and *Ball*, we now overrule that aspect of these cases.

## C. Ineffective Assistance of Counsel

Parker next argues his trial counsel was ineffective for multiple reasons, the most significant of which concerns the circumstances surrounding the Williams affidavit. To prevail on an ineffective assistance of counsel claim, "a defendant must prove that his attorney's performance fell below an objective standard of reasonableness *and* that he was prejudiced as a result." *United States v. Birk*, 453 F.3d 893, 898 (7th Cir. 2006). "[W]here an ineffective assistance claim may be resolved based on lack of sufficient prejudice, 'that course should be followed.' " *Id.* at 898-99 (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

Although the district court understandably had serious misgivings about the conduct of Parker's counsel in obtaining the affidavit and failing to disclose it until the day of trial, this conduct did not prejudice Parker. Parker's complaint is that Williams's affidavit was not admitted into evidence. True, but his counsel was permitted to cross-examine on its contents, and Williams testified about his reasons for retreating from at least some of his prior statements to law enforcement. Because the exculpatory material contained in the affidavit was admitted through Williams's cross-examination, Parker was not prejudiced by the exclusion of the affidavit itself.

Parker also claims prejudice as a result of several additional errors, namely: (1) counsel's failure to impeach

a codefendant based on her plea bargain; (2) the delay in bringing the Speedy Trial Act motion; and (3) the failure to raise a multiplicity argument regarding his indictment on two § 922(g) counts. As to the first of these grounds, the record reflects that Parker's counsel conducted a full cross-examination of the codefendant in question, and the terms of her plea bargain were specifically discussed in direct examination. As to the second, we have held that there was no Speedy Trial Act violation, so Parker's argument about counsel's eleventh-hour motion is meritless. There is no need to address counsel's failure to object to Parker's indictment on two § 922(g) counts. A defendant may be *prosecuted* on multiple § 922(g) charges, *cf. Ball*, 470 U.S. at 860 n.7; only multiple convictions and punishment are prohibited, and we are ordering direct relief on that aspect of the multiplicity claim.

## D. Supervised Release

Finally, Parker challenges the district court's imposition of two years of supervisory release. At sentencing, the parties disputed whether *United States v. Booker*, 543 U.S. 220 (2005), rendered the supervised release provisions of the Sentencing Guidelines advisory. The district court concluded *Booker* did not, and thus determined supervised release to be mandatory under U.S.S.G. § 5D1.2(a)(2). We have since held that *Booker is* applicable in this context; supervised release is discretionary absent a separate statutory provision making it mandatory. *See Larson*, 417 F.3d at 748. Because no such provision exists regarding Parker's offenses, *see* 18 U.S.C. § 924, the court erred in concluding that imposition of supervised release was mandatory.

"When an error relates to the validity of a defendant's sentence, it is harmless . . . if it did not affect the district

court's choice of sentence." *See United States v. Schlifer*, 403 F.3d 849, 854 (7th Cir. 2005). Recognizing that the question of *Booker*'s application to supervised release was in flux, the district court explicitly stated that "supervised release is not only required but also is appropriate." Accordingly, the district court's error was harmless.

For the foregoing reasons, we REMAND this case to the district court with instructions to VACATE the sentence on one of the § 922(g) convictions and merge the two § 922(g) counts of conviction into one. In all other respects, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*