# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-3162

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MALCOLM BAKER,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 325—**Blanche M. Manning**, *Judge.*

———————

ARGUED FEBRUARY 22, 2006—DECIDED JUNE 29, 2006

———————

Before FLAUM, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In this appeal, we address Malcolm Baker's argument that his conviction for possessing a gun as a felon should be vacated because the Government failed to disclose information on the history of the gun's ownership, in violation of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure. After *in camera* review, the district court concluded that there was no reasonable probability that the disputed information,

had it been disclosed, would have led to Baker's acquittal. We agree, and since Baker cannot demonstrate that the district court abused its discretion, we affirm the judgment below.

## I. BACKGROUND

On the night of December 6, 2003, Malcolm Baker was standing on a sidewalk when two Chicago Police Department trainee officers observed him drinking from a beer bottle. They slowed their cruiser and called to him. According to the officers, Baker immediately dropped the beer bottle and ran. The officers got out of the cruiser and chased him through the residential area. As they were running, one of the officers noticed that Baker was clutching something in his waist area, and he radioed the dispatch officer that they were dealing with a possible "UUW" (unlawful use of a weapon). The chase culminated one block away from where the officers first observed Baker. Baker fell, and Officer O'Carrol saw a gun fall from Baker's waist to the ground. The officers testified at trial that Baker fell towards the weapon in a manner suggesting that he was trying to retrieve it, but the second officer, Officer Bartuch, simultaneously kicked the gun to the curb. After handcuffing and arresting Baker, they picked up the gun, which was a loaded, .40 caliber, semiautomatic pistol.

Before trial, Baker moved for the disclosure of exculpatory evidence. The Government turned over documents identifying Chamon White as the registered owner of the gun, where he purchased the gun, White's employment as an Illinois Department of Corrections ("IDOC") prison guard, and White's address. Baker asked the Government to stipulate that he was not the registered owner of the gun. The Government agreed, with the express reservation that Baker could not "seek to introduce any evidence or make

any argument, directly or indirectly, about the identity of the registered owner of the gun." The Government also turned over documents that indicated the gun had been used in an April 2003 murder in Maywood, Illinois, several months before Baker's arrest. Baker moved *in limine* to exclude the documents that connected the gun to the Maywood murder and moved to exclude any reference to the murder at trial. The Government agreed, "provided that defendant did not seek to introduce any evidence or make any argument . . . about the whereabouts or possession of the gun before December 6, 2003."

Three weeks before trial, the Government submitted additional documents to the district court under seal and requested that the district court conduct an *in camera* review to determine whether the documents needed to be turned over to Baker. The Government was still investigating the April 2003 murder involving the gun and did not want to release reports that might compromise the investigation. The reports consisted of interviews of Chamon White and an individual named Kaywan Palmer, as well as an analysis of fingerprints found on the gun and at the murder scene. The Government argued that these documents related only to "the persons who possessed the weapon between January 2003 and April 9, 2003."

After a hearing, the district court, applying Rule 16 and *Brady*, found that the contested documents did not have to be turned over because they were irrelevant. Baker was convicted and now appeals.

## II. ANALYSIS

### A. Standard of Review

The district court's determination that the disputed information did not have to be disclosed is accorded substantial deference, and Baker can only succeed if he demonstrates that the district court's decision constituted

an abuse of discretion. *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002); *United States v. Plescia*, 48 F.3d 1452, 1457 (7th Cir. 1995). A district court's decision constitutes an abuse of discretion only "if no reasonable person could agree with the district court." *Tobel v. City of Hammond*, 94 F.3d 360, 362 (7th Cir. 1996).

## B.  Alleged *Brady* Violation

Pursuant to the Supreme Court's ruling in *Brady*, "the government has the affirmative duty to disclose evidence favorable to a defendant and material either to guilt or punishment." *United States v. Fallon*, 348 F.3d 248, 251 (7th Cir. 2003) (citing *Brady*, 373 U.S. at 83). Evidence favorable to a defendant includes both impeachment and exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). The Court has articulated three critical elements to a true *Brady* violation: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The Court has further explained that "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. We have described this inquiry as "materiality," and stated that the demonstration of materiality is the key to obtaining a new trial where a defendant alleges a *Brady* violation. *See United States v. Gillaum*, 372 F.3d 848, 858 (7th Cir. 2004) ("evidence is material under *Brady* only if there exists a 'reasonable probability' that its disclosure to the defense would have changed the result of the trial") (internal quotation marks and brackets omitted) (quoting *United States v. Irorere*, 228 F.3d 816, 829 (7th Cir. 2000)).

Baker argues that had he possessed additional information on the gun's ownership history, he would have been able to more successfully investigate the weapon's background to prove his theory at trial—that the gun was either already present on the street when he arrived or that one of the officers brought the gun to the crime scene. He also argues, without explaining why, that the information might have been useful to impeach the Government's witnesses. Baker does not actually contend that the reports constituted exculpatory material, but rather that there was some possibility that they might lead to unknown exculpatory material and that his trial preparation was hampered. We rejected such an argument in *Fallon*, where the defendant "argue[d] that his trial strategy was affected by the late disclosure of [certain] statements." *Fallon*, 348 F.3d at 253. We stated that "[m]ateriality focuses not on trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt." *Id.*

More to the point, Baker cannot demonstrate that there is a "reasonable probability" that he would have been acquitted had he possessed the suppressed information. In a prosecution for possession of a firearm in violation of 18 U.S.C. § 922(g), the ownership of the gun is not dispositive. *See United States v. Hubbard*, 61 F.3d 1261, 1272 (7th Cir. 1995) ("that Hubbard did not own the guns does not vitiate his possession of them for purposes of section 922(g)"). The Government was required to prove "(1) that [the defendant] had a previous felony conviction, (2) that he possessed a firearm and (3) that the firearm had traveled in or affected interstate commerce." *See United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). Baker stipulated as to the first and third elements, so the only question at trial was whether he had "possessed" a firearm. This is a case of alleged "actual possession," which occurs "when a tangible object is in the immediate possession or control of the party." *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990).

The verdict demonstrates that the jury found that the two Chicago Police officers who arrested Baker were credible, and he has not articulated how additional information on the gun's history would have impeached the officers' testimony. We have no reason to believe that a different outcome would have resulted had Baker possessed the information. For the purposes of the *Brady* inquiry, the best case scenario for Baker's theory that the gun was already lying on the ground is that one of the prior owners lived at an address directly in front of or near the location where Baker was arrested. Baker has not demonstrated that such a conclusion can be drawn from the suppressed information. But even if this were true, it would not overcome the officers' testimony that the gun fell from Baker's waist and that he appeared to attempt to retrieve it. Nor would it provide a reasonable explanation for Baker's decision to flee from the police and later resist arrest. The jury would be left scratching their heads over the infinitesimally low odds that Baker, a convicted felon, fled the police and managed to be unluckily apprehended at the exact location of an abandoned firearm.

Baker's other theory—that the police planted the weapon—faced additional hurdles that we do not envision the alleged exculpatory evidence would overcome. For the jury to accept this theory, the history of the gun would have to have been sufficient to convince the jury members that two rookie police officers had already become so corrupt that they had begun to employ the use of "drop guns"[1] to set

---

[1] *See Wells v. Rushing*, 755 F.2d 376, 378 (5th Cir. 1985) ("the major controversy centers around the .25 caliber pistol found in Harris' hand, which Wells alleges was a 'drop gun,' *i.e.*, a gun planted by Rushing after the shooting in order to give the appearance that he acted in self defense."); *see also Todd v. City*
(continued...)

up otherwise law-abiding citizens who happened to be consuming beer on the streets of Chicago. We doubt that the history of the gun would have aided Baker in making such a demonstration, or that it would have explained the officers' pre-apprehension radio to the dispatch officer that there was a possible UUW, based on their observation that Baker was clutching his waist.

Moreover, the Government supplied Baker with significant information on the history of the weapon. The name and occupation of the original owner of the gun was disclosed. As a result, Baker had a significant starting point for an investigation on the history of the gun's ownership, if he believed such an investigation would be fruitful. The Government also stipulated at trial that Baker was not the registered owner of the gun.

We confronted similar facts in *Gillaum*, 372 F.3d at 851, and concluded that the defendant failed to demonstrate materiality. In *Gillaum*, the defendant was charged with a violation of Section 922(g) after police searched his apartment and found a handgun on the premises. According to police testimony, contested by the defendant, Gillaum admitted during the search that he had handled the gun and that the police would find his fingerprints on it. At trial, Gillaum claimed that the gun had been brought into his apartment by a man named Stinson and that he had told Stinson that it could not be kept in the apartment.

---

[1] (...continued)
*of Chicago*, No. 96-C-5247, 1999 WL 356293 at *4 n.3 (N.D. Ill. May 24, 1999) (discussing "the notorious illegal practice of planting an unregistered loaded "drop gun" on the victim to make it appear that the officer's use of deadly force was in response to a threat and was hence justified"). We are aware of no cases discussing the use of "drop guns" in illegal consumption of alcohol investigations.

Gillaum was convicted, and during sentencing the Government produced, for the first time, a trace report by the Bureau of Alcohol, Tobacco, and Firearms that revealed the name of the original owner of the gun. The ATF report also included a police report in which the original owner of the gun reported a burglary and identified Stinson as the suspected perpetrator. Gillaum moved for a new trial under Rule 33, pursuant to *Brady*. We said, "the question for the jury was whether Gillaum, a convicted felon, possessed the handgun," and the "critical evidence was the testimony of [the defendant] and [the arresting officer]." *Id.* at 858. We found that "the history of the gun prior to entering Gillaum's apartment [was] immaterial" because "a jury could have considered the BATF report, found it persuasive, and still reached the same decision." *Id.*

Here, as in *Gillaum*, the jury could have considered the reports describing additional past owners of the gun, found them persuasive, and still convicted Baker on the basis of the eyewitness testimony of two police officers. But Baker's argument here is less persuasive than the argument made in *Gillaum* because the critical evidence relied on by the jury was the observation of two police officers rather than the testimony of one officer who claimed only that the defendant had admitted possessing the gun. *Gillaum* underscores that evidence of alternative ownership will rarely be sufficient to demonstrate materiality where there is credible evidence of possession. Furthermore, this case is subject to a more deferential standard of review than that applicable in *Gillaum* because the Government properly submitted the contested reports to the district court for *in camera* review. Baker has not demonstrated that there is any reasonable possibility the alleged *Brady* material would lead to his acquittal. He therefore falls far short of demonstrating any abuse of discretion on the part of the district court.

### C. Alleged Rule 16 Violation

For substantially the same reasons, Baker also fails to demonstrate that the district court abused its discretion when it concluded that a Rule 16 violation did not occur. *See United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995) ("We review a district court's ruling on a Rule 16 motion for an abuse of discretion"). Under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, the Government "must permit the defendant to inspect and to copy or photograph" all documents and similar items that the Government possesses if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Rule 16, as some courts have concluded, is broader than *Brady.* They have determined that Rule 16 requires the production of inculpatory as well as exculpatory evidence, which might assist in preparation of a defense. *See United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) ("we see no reason why inculpatory evidence could not serve the [same functions] as exculpatory evidence, and the government has not articulated any such reason."); *see also United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970) ("We are therefore of the view that the disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady.*").

But in the context of this case, that additional breadth is not implicated, since the disputed information in no way incriminated Baker. The information was not used by the Government in its case-in-chief and was not obtained from Baker. The only question is whether the disputed information was material to the preparation of Baker's defense, *i.e.*, was it exculpatory or helpful for impeachment? The answer is no. *See* 2 Charles Alan Wright, *Federal Practice & Procedure* § 254 (3d ed. 2000) ("to satisfy the requirement of [Rule 16] materiality a defendant must demonstrate

some indication that the pretrial disclosure of the disputed evidence would enable defendant significantly to alter the quantum of proof in his or her favor"). Since the answer is no, Baker has not demonstrated an abuse of discretion in the district court's conclusion that the disputed information was immaterial.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*