In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2784

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN W. BLOCH, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:12cr2-001—**Robert L. Miller, Jr.**, *Judge*.

ARGUED JANUARY 18, 2013—DECIDED MAY 20, 2013

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*.  Police officers in Elkhart, Indiana, responded to a report of gunfire at an apartment on Delaware Street and were greeted at the door by an obviously intoxicated John Bloch. Given the exigent nature of the call, the officers told Bloch to step outside while they checked to see if anyone was injured. The apartment belonged to Bloch's girlfriend, who was inside; the officers told her to wait outside as well. As it

turned out, there were no gunshot victims in the apartment, but the officers located a loaded Glock handgun and an SKS assault rifle in plain view.

As the officers removed the firearms from the apartment, Bloch protested that the guns were his and demanded their return. This was a bold statement under the circumstances; Bloch is a felon and also has a conviction for a domestic-violence misdemeanor, making his firearm possession a federal crime. *See* 18 U.S.C. § 922(g)(1), (g)(9). He was arrested and indicted for unlawfully possessing a firearm as a felon and as a domestic-violence misdemeanant. While in jail awaiting trial, he made another series of remarks he would later come to regret. He told a fellow inmate that the police found his Glock and SKS rifle at his girlfriend's apartment and that he should have hidden them better. A jury found Bloch guilty as charged, and the district court imposed consecutive sentences of 120 months and 18 months on the two counts, for a total sentence of 138 months.

The main issue on appeal is whether the evidence was sufficient to prove that Bloch possessed the firearms. Bloch makes the remarkable claim that his spontaneous demand for return of the guns was categorically unreliable as evidence of possession because he was drunk when he said it. To the contrary, the jurors were entitled to credit this evidence if they found it persuasive; and they obviously did. Maybe they relied on the common wisdom found in the proverb *in vino veritas* ("wine speaks the truth"). *See* WILLIAM BARKER,

THE ADAGES OF ERASMUS 100 (2001). Besides, while sober, Bloch confided to another jail inmate that he kept his Glock and his SKS rifle at his girlfriend's apartment and regretted that he had not hidden them well enough. The evidence was sufficient to prove possession.

Bloch also challenges his consecutive sentences on the two convictions, but the government raises a more fundamental error that requires correction and resentencing. A single incident of firearm possession can yield only one conviction under § 922(g), no matter how many disqualified classes the defendant belongs to or how many firearms he possessed. Because Bloch's convictions for violating § 922(g)(1) and § 922(g)(9) arise out of the same incident of firearm possession, they must be merged into a single count of conviction and Bloch must be resentenced.

## I. Background

One evening in November 2011, Elkhart police responded to a report of shots fired at an apartment on Delaware Street. When the officers arrived and knocked on the door of the apartment, an obviously intoxicated Bloch answered. Because they were investigating a report of gunfire, the officers told Bloch to step outside while they swept the apartment to ensure that no one was injured. The apartment belonged to Bloch's girlfriend, and she too was asked to wait outside during the sweep.

No one was in fact injured, but the officers found a fully loaded Glock .40-caliber semi-automatic handgun

sitting on a nightstand in a bedroom and an SKS assault rifle in an open closet. Next to the assault rifle was a clip containing 54 rounds of ammunition, and nearby were 144 rounds of .40-caliber ammunition for the pistol. The officers seized the guns and the ammunition.

As the officers carried the firearms and ammunition out of the apartment, Bloch objected to the confiscation of his property. Lubricated by drink and using language occasionally laced with profanity, Bloch told the officers that the guns were his and demanded their return. But as a convicted felon, Bloch's possession of the firearms was illegal, so the officers arrested him. As he was taken off to jail, Bloch continued to demand the return of his guns.

A grand jury indicted Bloch on two counts: (1) unlawful possession of a firearm by a felon, *see* 18 U.S.C. § 922(g)(1); and (2) unlawful possession of a firearm after having been convicted of a domestic-violence misdemeanor, *see id.* § 922(g)(9). While in jail awaiting trial, Bloch was housed with Demetrius Johnson, an inmate who was facing charges of check fraud and burglary. They became friends, sharing food and playing chess, and eventually Bloch confided to Johnson about the circumstances that landed him in jail. He explained that he had been partying at his girlfriend's apartment when someone called the police about "shots fired." When the police responded, they searched the apartment and found his guns. Johnson pressed Bloch for details about the firearms. Bloch explained that he owned a Glock handgun and an

assault rifle, and kept them upstairs at his girlfriend's apartment. He also said he should have hidden them in the baby's room.

A jury convicted Bloch on both counts. At sentencing the district court grouped the § 922(g)(1) and § 922(g)(9) convictions pursuant to U.S.S.G. § 3D1.2(d). Based on certain aggravating offense characteristics and Bloch's lengthy criminal record, the resulting offense level was 26, which when combined with a criminal history category of VI, yielded an advisory guidelines range of 120 to 150 months. The district court weighed the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), and settled on a sentence of 138 months, structured as follows: 120 months—the maximum—on the § 922(g)(1) count, and a consecutive 18 months on the § 922(g)(9) count.

## II. Discussion

Bloch's first argument on appeal is a challenge to the sufficiency of the evidence. More specifically, he claims that the evidence was insufficient to prove that he possessed the firearms that were seized during the search of his girlfriend's apartment. The burden on a sufficiency-of-the-evidence challenger is heavy. *See United States v. Carter*, 695 F.3d 690, 698 (7th Cir. 2012) ("A defendant who challenges the sufficiency of the evidence faces a daunting standard of review."). Evaluating the weight of the evidence is the job of the finder of fact, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979), so appellate review is highly deferential. We view the evidence and draw

all reasonable inferences in the light most favorable to the jury's verdict and will reverse "only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010).

Bloch was charged with unlawfully possessing the handgun and rifle as both a felon and as a domestic-violence misdemeanant. To convict him of these crimes, the government had to prove that he possessed a firearm that had traveled in or affected interstate commerce, and also that he had the requisite felony and domestic-violence misdemeanor convictions. *United States v. Allen*, 383 F.3d 644, 646-47 (7th Cir. 2004). There is no dispute about Bloch's record of convictions, nor is there any question that the two firearms seized from his girlfriend's apartment passed through or affected interstate commerce. Bloch challenges only the government's evidence of possession.

Possession in this context can be actual or constructive. *See United States v. Villasenor*, 664 F.3d 673, 681 (7th Cir. 2011). The two types of possession are qualitatively different, but their legal effect is the same. *See United States v. Ellis*, 622 F.3d 784, 794 (7th Cir. 2010). Actual possession occurs when the defendant has immediate physical possession or control of a firearm. *United States v. Hampton*, 585 F.3d 1033, 1040 (7th Cir. 2009); *United States v. Baker*, 453 F.3d 419, 423 (7th Cir. 2006). Constructive possession does not require immediate physical possession or control; instead, the government must prove that the defendant "knowingly had both the

power and the intention to exercise dominion and control over the object, either directly or through others." *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012). This construct sometimes presents challenges in differentiating between "true possessors" and "mere bystanders" who have no connection to a gun but are merely in the same vicinity. *Id.* Because the law does not ascribe constructive possession to mere bystanders, the government must establish a nexus between the defendant and the gun. *See id.*; *Villasenor*, 664 F.3d at 681. The "nexus" inquiry sometimes invites its own complexities.

Bloch spared the government the problems of proof ordinarily associated with constructive possession, particularly the complexities that sometimes arise when firearms are discovered in a place occupied by the defendant but outside of his exclusive control. *See Griffin*, 684 F.3d at 695-98. Here, the government established possession largely through Bloch's unguarded statements at the scene of the search. As the officers were removing the Glock handgun and the SKS rifle from his girlfriend's apartment, Bloch blurted out that the guns were his and demanded their return. He insists that these statements are wholly unreliable as evidence of possession because he uttered them while drunk. To the contrary, Bloch's intoxication does not categorically undermine the reliability of this evidence; it was instead a factor for the jury to consider in deciding what weight, if any, to give to the statements. *See Mergner v. United States*, 147 F.2d 572, 572 (D.C. Cir. 1945) (discussing the evidentiary principle that a defendant's intoxication

is a factor for the jury to consider in determining the weight to give a confession); 2 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 499, at 708 (James H. Chadbourn ed., Little, Brown & Company rev. ed. 1979) (same).

Perhaps the jury found Bloch's claim of ownership more reliable precisely *because* he made it while under the influence of alcohol. If so, we would have no reason to question that judgment; Bloch offers no evidence or authority to establish that his intoxication would have made his statements unreliable. In these circumstances, the law relies on the collective common sense and human experience of the jury. And in that domain, "'[i]n vino veritas' is an expression that did not originate in fancy." *Britt v. Commonwealth*, 512 S.W.2d 496, 500 (Ky. 1974). "Wine speaks the truth" is "[a]n adage found in many classical authors, meaning that strong drink strips the mind of its pretences and brings out into the open what is hidden in a man's heart." BARKER, *supra*, at 101. It has long been observed that "[t]here is truth in wine; it extracts secrets from the locked-up bosom, and puts not only the reserved, but even the habitual liar off his guard." *Hudgins v. Georgia*, 2 Ga. 173, 188 (1847). Notwithstanding his intoxication, Bloch's impulsive demand that the officers return his guns is quite reliable as evidence of possession.

If more were needed, the jury also heard evidence that a sober Bloch admitted to Johnson, his fellow inmate and chess partner in the jail, that the Glock pistol and the SKS rifle were his. He also admitted that he kept

the guns at his girlfriend's apartment and said he regretted not having hidden them in the baby's room. Bloch's own statements at the scene and in the jail, considered separately or together, were easily sufficient to establish his possession of the firearms.

Bloch also challenges his sentence, arguing that the district court committed a guidelines error by imposing consecutive terms of imprisonment. The government raises a different and more fundamental error, however, and forthrightly acknowledges that it must be corrected. The jury found Bloch guilty of two § 922(g) crimes—count one was based on his status as a felon, *see* § 922(g)(1), and count two was based on his status as a domestic-violence misdemeanant, *see id.* § 922(g)(9). But a person cannot be convicted of more than one § 922(g) crime based on a single incident of possession. We have held that "[a]lthough the government is free to pursue multiple theories of violation at trial, only one conviction may result under § 922(g) for a single incident of possession, even though the defendant may belong to more than one disqualified class." *United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007) (citation omitted). In *Parker* we adopted the unanimous position of our sister circuits that "§ 922(g) cannot support multiple convictions based on a single firearm possession because the allowable unit of prosecution is the incident of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession." *Id.*

Moreover, a single act of possession can yield only one conviction under § 922(g) even if the defendant

possessed multiple firearms at the same time. *See United States v. Moses*, 513 F.3d 727, 731 (7th Cir. 2008) (recognizing that for § 922(g) "the unit of prosecution [is] the act of possession, and not the number of firearms possessed"); *United States v. Buchmeier*, 255 F.3d 415, 422 (7th Cir. 2001) ("We have thus determined that when a defendant's possession of multiple firearms is simultaneous and undifferentiated, the government may only charge that defendant with one violation of § 922(g)(1) and § 922(j), regardless of the actual quantity of firearms involved."); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) ("We now . . . join all the other Circuits that have addressed this issue to hold that Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition.").

Bloch's two convictions are therefore multiplicitous and must be merged. The convictions arose from the same incident of firearm possession, and the only difference between them is the disqualified class to which Bloch belonged. That Bloch possessed two firearms does not affect this conclusion. The proper remedy for the multiplicity error is merger; one conviction must be vacated and merged into the other. *Parker*, 508 F.3d at 441-42. Once the convictions are merged, the statutory maximum is 120 months. *See* 18 U.S.C. § 924(a)(2). Because Bloch's sentence exceeds that maximum, he must be resentenced. We commend the government for raising the error.

For the foregoing reasons, we VACATE the judgment and REMAND for further proceedings consistent with this opinion. The district court shall merge the two § 922(g) convictions and resentence Bloch on a single count of conviction.