NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 7, 2022
Decided November 15, 2022

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| Nos. 21-2619, 21-2650, 21-2671 & 21-3211 | Appeals from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| *v.* | |
| KYOMBE BOLDEN, *et al.*, *Defendants-Appellants*. | No. 1:17-cr-07 DRL-SLC |
| | Damon R. Leichty, *Judge*. |

## O R D E R

All four appellants—Kyombe Bolden, William Beamon, Ronnie Burrus, and Demetri Beachem—belonged to the 2500 gang in Indiana. An indictment charged them with attacking three people (two members of a rival gang plus an innocent bystander). All four pleaded guilty to three counts of violent assault in aid of racketeering, 18 U.S.C. §1959(a), and three counts of using a firearm during that offense, 18 U.S.C. §924(c). The firearms crime provides a minimum sentence of 120 months, consecutive to the sentence on the substantive offense in which the firearm was used, but sentences on multiple §924 convictions may run concurrently to each other. When negotiating the guilty pleas, the four defendants, their lawyers, and the prosecutor all assumed that the district court would impose concurrent sentences on the §1959 crimes and concurrent

sentences on the §924 crimes, but run the racketeering and firearms sentences consecutively.

That is exactly what happened. Each defendant was sentenced to 120 months' imprisonment on each firearms count. The firearms sentences run concurrently with each other but consecutively to the racketeering sentences. The upshot is a total of 360 months for Beamon, 360 months for Burrus, 324 months for Bolden, and 288 months for Beachem. All four defendants moved to withdraw their pleas, objecting to the district court's decision to calculate the advisory range by starting with the attempted-murder Guideline rather than the assault Guideline. The judge denied these motions, observing that the plea agreements left sentencing in the court's hands and that the nature of the charges (violent assault in aid of racketeering) did not determine the way cross-references work in the Guidelines, which incorporate significant real-offense (as opposed to charge-offense) principles.

Come the appeal, all four defendants have presented an argument never mentioned in the district court: instead of running the §924 convictions concurrently, the judge should have merged them into a single §924 conviction for each defendant, so that each would have a total of four convictions rather than six. This argument would not affect the time to be spent in prison, but it would reduce each defendant's special assessment from $600 (six counts of conviction at $100 per count) to $400. The prosecutor has conceded that merger is required by this circuit's precedent. See *United States v. Cureton*, 739 F.3d 1032, 1039–45 (7th Cir. 2014); *United States v. Bloch*, 718 F.3d 638, 643–44 (7th Cir. 2013).

Defendants are not satisfied by the prospect of a remand whose only practical effect will be to shave $200 off of each one's special assessment. Instead all four defendants contend that they are entitled to have their pleas set aside—in other words, to obtain the relief that they initially sought on the ground that the Guideline range was too high. The prosecutor, though consenting to merger of the §924 counts, opposes any order vacating the guilty pleas and convictions on the other four counts.

Appellate review proceeds under the plain-error standard, because the current argument was not presented to the district judge. Error has been conceded, but it is not clear, materially harmful error. (The difference between concurrent and merged sentences is so slight that no one caught it in the district court.) And the final step of plain-error review, finding that failure to correct the error would seriously undermine the fairness or public reputation of judicial proceedings, see *United States v. Olano*, 507 U.S. 725, 735–37 (1993), has not been established. Defendants say that the district judge should have told them about the way the federal unit of prosecution works when multiple gun counts are based on temporally overlapping conduct. Maybe so, though "unit

of prosecution" is an esoteric concept even for many lawyers. But defendants care about consequences rather than terminology. For each of these four defendants, the only practical difference between concurrent and merged §924 sentences is the $200 reduction in special assessments. We do not think it remotely likely that, if the judge had told each defendant that he would owe $200 less than his lawyer had informed him, any of the four would have balked at entering the plea and insisted on a trial. Vacating these pleas, not enforcing them, is what would bring the judicial system into disrepute.

All four defendants' plea agreements contain waivers of any right to contest the sentence on appeal. But two of the four (Burrus and Beachem) nonetheless contest their sentences, arguing on both constitutional and Guidelines grounds that the district judge should not have used the attempted-murder Guideline as a starting place. Their constitutional argument, which Beamon joins, is incompatible with *United States v. Watts*, 519 U.S. 148 (1997), and we do not address the Guidelines argument given the waiver.

Burrus and Beachem invoke *United States v. Litos*, 847 F.3d 906, 910–11 (7th Cir. 2017), for the proposition that substantial arguments may be considered notwithstanding waivers. That is not what *Litos* holds, and it would effectively prevent defendants from negotiating for benefits in exchange for waivers. If a waiver can be enforced only when the district judge is *right*, then the waiver has no effect; the court of appeals always would reach the merits and try to classify some errors as worse than others. The waiver blocks the whole effort. (Most appellate waivers allow defendants to contend that a sentence is *illegal*, in the sense that it exceeds the statutory maximum, but none of our four defendants makes such an argument.)

*Litos* dealt with a different problem. Four defendants were sentenced to pay restitution. One of the four negotiated an appellate waiver. *Litos* first held that the award of restitution was erroneously large and then asked what to do about the fourth defendant, who had waived this argument on appeal. The court observed that the award was joint and several, which meant that it could be collected in full of any of the defendants. If only three defendants benefitted from a reduction, the fourth would remain liable for the whole amount. Enforcing the appellate waiver in *that* circumstance, we observed, would make the defendant worse off (his effective restitution obligation would be quadrupled on appeal). The function of an appellate waiver is to commit factual and legal questions to a single judge (the district judge) rather than to four (one district judge plus three circuit judges), not to expose any defendant to the possibility that a component of the sentence would become more onerous on appeal. That's why we reviewed the fourth defendant's restitution obligation in *Litos*. Nothing remotely similar occurred in this appeal. Defendants agreed to accept a single district judge's resolution of all disputes about their sentences, and we hold them to that bargain.

The sentences are vacated to the extent that we remand with instructions to merge the §924 sentences into a single conviction for each of the four appellants. The judgments are otherwise affirmed.